**SO ORDERED.**

**SIGNED this 24 day of August, 2006.**



JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re: )
)
**REX OLIVER FAIR and** )
**ANGELA SUE FAIR,** ) Case No. 05-43450
) Chapter 13
Debtors. )
)

### MEMORANDUM OPINION AND ORDER PARTIALLY GRANTING, AND PARTIALLY DENYING, DEBTORS' OBJECTION TO THE CLAIM OF GMAC MORTGAGE CORPORATION

This matter is before the Court on Debtors' objection to the claim of GMAC Mortgage Corporation ("GMAC").[1] Debtors request this Court find that GMAC's claim is unsecured based upon a Satisfaction of Mortgage that was inadvertently recorded by GMAC prior to the filing of this bankruptcy. This matter constitutes a core proceeding, and the Court has jurisdiction to decide it.[2]

**I. FINDINGS OF FACT**

---

[1] Doc. 35.

[2] 28 U.S.C. §§ 157(b)(2)(B) and 1334(b).

On May 17, 1996, Debtors purchased a home in Wamego, Kansas that was secured by a purchase money mortgage to First Union Home Equity Bank, N.A. ("First Union") in the amount of $57,000 (the "first mortgage"). Debtors also gave a second mortgage to First Union in the amount of $9,000 (the "second mortgage").

At some time between May 17, 1996 and July 18, 1997, Debtors decided to borrow money to make some home improvements and to pay off other existing debt. They executed a promissory note, secured by a mortgage, to First Plus in the amount of $65,000. As a condition to First Plus making this loan, Debtors were required to pay off the $9,000 second mortgage to First Union. When First Union received the payment for its $9,000 second mortgage, it inadvertently released the first mortgage by filing a Satisfaction of Mortgage on July 18, 1997. Debtors admit they did not pay First Union the amount necessary to pay off the first mortgage, and no evidence was received that anyone else paid the first mortgage on Debtors' behalf.

First Union assigned its note and mortgage to Residential Funding Corporation, which in turn assigned the note and mortgage to JP Morgan Chase Bank, as Trustee. At some point in July 2003, GMAC took over servicing of the mortgage that was erroneously released by First Union in 1997. Debtors received documents from GMAC and, for 18 months, made direct payments on the inadvertently released mortgage to GMAC. During this time, they were in a prior bankruptcy proceeding.

At some point, Debtors determined that the mortgage had been released, and stopped making payments. Their first bankruptcy was dismissed on August 12, 2005, and following the dismissal of that prior bankruptcy, GMAC filed a foreclosure suit against this property on the same date Debtors filed this bankruptcy proceeding. GMAC filed a proof of claim in the current case and asserted that its claim was secured. Debtors contend that the admittedly inadvertent satisfaction of mortgage that

2

was filed on July 18, 1997 terminated GMAC's security interest, and that its claim should not be allowed as a secured claim, but instead should be treated as unsecured. Conversely, GMAC contends that under Kansas law, the inadvertent filing of the mortgage release does not terminate the security agreement.

At trial, for the first time, Debtors also objected to GMAC's inspection fees, and to the reasonableness of the attorney fees being sought by GMAC for filing the foreclosure proceeding.

## II. CONCLUSIONS OF LAW

The main issue before the Court is whether GMAC holds a valid security interest in Debtors' real property.[3] Debtors do not challenge the fact that they executed the mortgage and that it was valid when executed, nor do they claim that they, or anyone else, paid off the note, such that they would be entitled to a release of the mortgage. Notwithstanding those admissions, they claim that as between themselves and GMAC, GMAC now holds no security interest because they inadvertently released the mortgage.

This issue is governed by applicable state law, which controls issues relating to security interests.[4] The Court thus turns to Kansas law to determine whether GMAC has a security interest in Debtors' property. Again, Debtors do not dispute that they entered into a mortgage with First

---

[3]Debtors have not raised the issue of whether this security interest, if one exists, was properly perfected or if it is subject to the trustee's avoidance powers under § 544, so that issue is not before the Court. Even if it were, such an action could only be brought by the Trustee, and such an action would have to be brought by an adversary proceeding. *See Gilliam v. Bank of America Mortgage (In re Gilliam)*, Adv. No. 03-6053 (October 28, 2004) (Somers, J.) and *Hansen v. Green Tree Servicing, LLC (In re Hansen)*, 332 B.R. 8, 16 (10th Cir. BAP 2005) (both holding that debtors in Chapter 13 proceedings lack standing to exercise the trustee's avoidance powers under § 544) and Advisory Committee Notes to Fed. R. Bankr. P. 7001 (noting that the rules relating to adversary proceedings "include those brought to avoid transfers by the debtor under § 544 . . . ."). In addition, the Court would have to determine whether the order confirming the Chapter 13 plan in this case (which specifically called for repayment of the very mortgage Debtors now contend doesn't exist and they need not pay) would bar any action to avoid this lien. *See In re Layo*, ___ F.3d ___, 2006 WL 2348551 (2nd Cir. 2006) (holding that Chapter 13 plan, which provided that the bank's claim was secured by a valid first mortgage, is binding on trustee and debtor, and their adversary proceeding to avoid the mortgage was dismissed on *res judicata* grounds).

[4]*In re Barton Industries, Inc.*, 104 F.3d 1241, 1247 n. 2 (10th Cir. 1997).

Union, which was eventually assigned, through various parties, to GMAC.[5] The evidence at trial also established that First Union never received the funds to pay off this first mortgage. Instead, the evidence was clear that the first mortgage was inadvertently released by First Union when Debtors paid First Union's second mortgage, through the proceeds of the loan with First Plus.

The United States District Court for the District of Kansas has addressed the issue of whether the holder of a mortgage and note are bound by an inadvertent release of those documents, or whether a creditor's security interest remains valid despite the inadvertent release. In *Mid-Continent Lodging Associates, Inc. v. First Nat. Bank of Chicago*,[6] the court decided the issue as follows:

> As for plaintiffs' assertion that the defendants are bound by the release even if it was issued by mistake, that view is not supported by Kansas law. In [*Southern Kansas Farm v. Garrity*, 57 Kan. 805 (1897)], the Kansas Supreme Court addressed a similar factual situation and concluded: "Neither is a release entered upon the records conclusive where payment is not made and it appears to have been done by accident or mistake. In such a case, equity will intervene and grant relief. The cancellation of the mortgage is to be regarded as only prima facie evidence of its discharge, and the party asking relief may show that the release was made by fraud, accident, or mistake. <u>When that is shown the mortgage will be held and enforced as a valid security.</u> In this there are no intervening parties, and no questions as to what their rights might be can be raised. Under the testimony, there can be no doubt that, as between the parties themselves, the release is to be treated as a nullity, and that the plaintiff is entitled to a foreclosure of its mortgage." *Garrity*, 57 Kan. at 808. *Garrity* is not an aberration; Kansas law has consistently recognized equitable relief from mistaken actions where the circumstances warrant doing so. *See e.g.*, *North River Ins. Co. v. Aetna Finance Co.*, 186 Kan. 758, 352 P.2d 1060 (1960) (chattel mortgage released under mistake of fact could be reinstated); *Conner v. Koch Oil Co.*, 245 Kan. 250, 777 P.2d 821 (1989) (reformation appropriate to reform releases of oil and gas leases); *Harper v. Continental Oil Co.*, 805 F.2d 929 (10th Cir.1986) (reformation available where transfer of lease was due to mistake). There are circumstances where equitable relief might be inappropriate, such as where the rights of innocent third parties are

---

[5] Although Debtors contest this fact in their post trial brief, and the Court agrees GMAC's witness was not particularly strong on this issue, the Court finds that there was sufficient evidence, not rebutted by any exhibit or testimony presented by Debtors at trial, to establish that GMAC holds the servicing rights to this mortgage and has standing to file a claim and seek foreclosure.

[6] 999 F. Supp. 1443 (D. Kan. 1998).

4

> concerned or where a party has reasonably relied to his detriment on the mistaken release. But no such circumstances are asserted here.
>
> The uncontroverted evidence shows that the release of the mortgage and the cancellation of the note were mistaken and inadvertent. Plaintiffs provided no consideration for these actions and do not claim to have changed their position in reliance upon them. The balance of the note remains unpaid and plaintiffs are in default under the terms of the note. Under these circumstances, equity requires the court to declare that, notwithstanding the mistaken release of the Loan Documents, the Note, Guaranty, and Mortgage remain valid and enforceable and the defendants hold a valid promissory note and mortgage against the Real Property.[7]

The Court finds the holding of *Mid-Continent Lodging Associates, Inc. v. First Nat. Bank of Chicago* to be directly applicable in this case. There is no factual question that the release of the first mortgage was inadvertent. Therefore, according to Kansas law, "the mortgage will be held and enforced as a valid security" as between the parties.

The fact that the cases upon which this Court relies did not arise in a bankruptcy context does not alter their application to the issue presently before the Court, because of the posture in which the issue is presented. Debtors make it very clear they are not seeking to utilize the trustee's strong arm powers contained in 11 U.S.C. § 544 to avoid the mortgage in this case, nor could they. Rather, they contend that the inadvertent pre-petition release of the mortgage renders GMAC's mortgage null and void, and makes its claim unsecured. As noted above, Kansas law determines whether a valid security interest exists, and under the facts of this case, GMAC clearly retains a valid security interest in this property under Kansas law. Thus, as between this creditor and these Debtors, there is a valid security agreement under Kansas law. The issue of whether the Trustee might have the ability to void this mortgage is not before the Court.[8]

---

[7]*Id.* at 1447-48 (emphasis added).

[8]The District Court in *Mid-Continent Lodging* specifically noted that "[i]n this there are no intervening parties, and no questions as to what their rights might be can be raised." Accordingly, the logic of *Mid-Continent Lodging* may not salvage a mortgage when a trustee is a party in interest.

5

## Objection to Inspection Fees and Attorney Fees

At trial, Debtors also argued, in the alternative, that if GMAC's claim remained secured by the inadvertently released mortgage, that its claim should nonetheless be reduced by $180, representing twelve $15 charges for "property inspection fees." Debtors also argued at trial that the claimed $750 attorney fee for filing the state court foreclosure action was not reasonable. Nothing in Debtors' objection[9] to GMAC's claim, however, put GMAC on notice that either of these issues was in dispute or would be the subject of evidence or challenge. Debtors' counsel argued these points, and the Court took evidence, without objection by GMAC, about the property inspection fee, and the fact that the only work done in the foreclosure suit (for which GMAC seeks $750), was to prepare and file the petition, since this bankruptcy then stayed further action in that state court proceeding.

Debtors argue that the plain terms of the mortgage bar collection of an inspection fee unless GMAC first notifies the Debtors of the upcoming inspection. Debtors testified GMAC had never given them notification they were going to do an inspection. The Mortgage, a copy of which was admitted into evidence, does state "Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property." The Court interprets this sentence to mean that if Lender intends to enter inside the house and inspect it once entry has been made, the Lender must give prior notice of the intent to enter and inspect. GMAC's witness indicated each of the inspections was a short drive-by inspection to determine "if the house was still standing." Accordingly, this Court will not disallow the property inspection fees

---

[9]Doc. 35.

6

solely because notice was not given to Debtors of GMAC's intent to conduct the drive-by inspections.

That said, the Court cannot understand why GMAC needed to make 12 drive-by inspections between April 6, 2005 and June 27, 2006. GMAC presented no evidence why such frequent drive-by inspections were necessary. The Court will reduce the $180 for inspections down to $90. The Court is aware, however, that GMAC may not have realized this was an issue for trial, since it had never previously been raised. That may be why GMAC did not appear to be ready to produce evidence about the necessity of the inspections. If GMAC wishes to have the opportunity to present additional evidence on this matter, it should seek reconsideration on this limited issue.

As to a reasonable attorney fee for preparing a mortgage foreclosure petition, the Court understands that this certainly depends on how complicated the title work is that must be thoroughly studied before commencing any such action. This one might have been a bit complex because of the mortgage release issue, and the necessity for an attorney to research whether an inadvertently released mortgage could be foreclosed. The Court is aware of the fact that the firm with whom GMAC's attorney associates processes hundreds of mortgage foreclosure petitions each year, and likely has experienced support staff employed who prepare the first draft of the petition and other required court papers for counsel's review. For that reason, the Court would be surprised that it would have taken more than an hour of attorney time to prepare and file the foreclosure action, and perhaps one hour to research the law on the inadvertent release of the mortgage. The Court will thus allow $350 for attorney fees, thus a reduction of $400.

Again, because this issue likely took GMAC by surprise, in that it was not raised in Debtors' objection to the claim, the Court will allow reconsideration if GMAC wishes to present evidence on

7

the amount of time, and the hourly rate, used in this particular case. Such motion for reconsideration must, of course, be filed within ten days.

## III. CONCLUSION

The Court finds that Debtors' objection to the claim filed by GMAC is overruled, except it will be reduced by $490, representing a $90 reduction in inspection fees, and a $400 reduction in fees representing work done on the foreclosure filed the same date as the bankruptcy. Because the mortgage was inadvertently released, it is effective as between Debtors and GMAC. Therefore, GMAC's claim is secured.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Debtors' Objection to the Claim of GMAC Mortgage Corporation is denied, except for a reduction of $490.

**IT IS FURTHER ORDERED** that the confirmed plan is no longer feasible in light of this decision. First, the confirmed plan contained no provision to cure any arrearage to GMAC. GMAC's proof of claim in this case indicates that on the date of filing, the arrearage was $7,190.05. The Court understands Debtors have not been making mortgage payments since the plan was filed as a result of their belief that GMAC's debt was unsecured. For this reason, GMAC's arrearage is likely considerably higher, since the payments are $586 per month, and the case has been pending 10 months.[10]

In addition, a Kansas Department of Revenue claim for $1,709 has been filed, which was not provided to be paid by the confirmed plan. Further, the IRS priority claim was filed for $8,673, which is $900 more than estimated in the plan. Potawatomi County has filed a claim of $2,058 that

---

[10]Debtors's Schedule I indicates they are making a house payment, which does not include real estate taxes, of $586 per month. The Court hopes Debtors have been placing this amount per month into a savings or other account pending resolution of the GMAC issue. Likewise, Debtor's Schedule I indicates they are paying real estate taxes as they come due; the claim from the County might indicate otherwise.

8

has not been addressed in the confirmed plan. The plan as filed was estimated to last 57 months, at $316/month. Obviously, even if the GMAC arrearage is only $7,000, the plan is no longer feasible. This is especially true when one reviews Schedule I and J, which show a projected excess income of $155.71 against a present plan payment of $316 – and that is for a plan that does not address the above claims.

Because the confirmed plan is not feasible, the Trustee has filed a Motion to Dismiss for lack of feasibility. This motion was considered at a hearing held August 22, 2006, and the Court continued that Motion to Dismiss to October 10, 2006 at 10:00 a.m., to allow Debtors to file a motion to modify the plan, and issue a notice with an objection deadline that would expire at least 10 days prior to that hearing, if they believe there is any possible way for them to propose a feasible plan in light of this Court's ruling. If Debtors believe they can cash flow a plan paying the claims in this case, they shall file a motion to modify their plan, which shall be filed by **September 8, 2006.** If the plan is not filed by that date, the Court will assume that Debtors are unable to propound a feasible plan, and the Court will dismiss the case, without a hearing, on or after **September 11, 2006.**

###

9